# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSHUA I. LEE**                                        **CIVIL ACTION**

**VERSUS**                                               **NO. 19-12280**

**DARREL VANNOY, WARDEN**                                **SECTION "M"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* **28 U.S.C. § 2254(e)(2)**.[1]

## I.    Factual and Procedural Background

The petitioner, Joshua I. Lee ("Lee"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On September 2, 2010, an Orleans Parish Grand Jury indicted Lee and his brother, Christopher Lee, for the second degree murder of Chad Huth, the attempted second degree murder of Christopher Wells, and the aggravated burglary of Huth's residence.[3]  Christopher Lee was also charged with conspiracy to commit armed robbery with a firearm.[4]  On September 10, 2010, both Lee and his brother entered pleas of not guilty.[5]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 13, Indictment, 9/2/10; Grand Jury Return, 9/2/10; Docket Entry, 9/2/10.

[4] St. Rec. Vol. 1 of 13, Indictment (handwritten count four), added 5/17/18.

[5] St. Rec. Vol. 2 of 13, Minute Entry, 9/10/10.

The record reflects that, in the early morning hours of April 22, 2010, Chad Huth was watching television in his living room with his roommate, Paul Patin, and two friends, Antar Breaux and Christopher Wells.[6]  Wells routinely stopped at Huth's home after work.  That night, they were expecting other friends to join them; so, no one was concerned when there was a knock at the door.  When Patin opened the door, there were five or six men standing on the porch that he did not know.  When he tried to close the door, the men forced the door open causing the doorjamb to break.  As they did so, a gunshot rang out.

At the sound of the first shot, Breaux ran out the back door of the house, and Huth got up from the sofa and began to move away from the door and apparently ended up locked in the bathroom.  Patin slid down to the floor and was able to crawl to his bedroom and locked the door.  When Patin could not find his gun, he jumped out the window and hid under his neighbor's house.

In the meantime, Wells ran toward Huth's bedroom.  As he did, he looked back to see more shots being fired in Huth's direction.  While in Huth's room, Wells looked for Huth's gun but was unable to find it.  He attempted to hide behind the bedroom door, but when he was discovered, one of the men brought him back to the living room.  As they walked, Wells saw shots being fired towards the bathroom at the back of the house.  The men brought Wells into the hallway in front of the locked door of Patin's bedroom.  When Patin did not respond to their commands to open the door, one of the men kicked the door open to discover the room was empty.

At that point, one of the men, who had dreadlocks, asked Wells where the money was kept, and Wells pointed to Patin's dresser.  The other man, later identified as Lee, pushed Wells up against the wall, put a gun to his head, and pulled the trigger.  The gun jammed and did not fire.

---

[6]The facts as determined at trial are taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Lee*, 217 So.3d 1266, 1267-70 (La. App. 4th Cir. 2017); St. Rec. Vol. 8 of 13, 4th Cir. Opinion, 2016-KA-0049, pp. 2-9, 4/26/17.

Wells moved to the middle of the room and the man with dreadlocks fired a gun at him multiple times.  Wells suffered significant graze wounds to his chest and shoulder and a through-and-through wound to his arm causing him to lose a great deal of blood.  After the men left, Wells locked the front door of the house and began to look for his cell phone to call for help, but he could not find it.  He beat on the locked door of the bathroom but there was no response.  Wells then left the house to knock on a neighbor's door for help, but no one answered.  He returned to Huth's house to again look for Huth and his phone but found neither.  He went back outside to reach a different neighbor, and that person was already calling 911.

Patin remained hiding under the neighbor's house until he heard Wells screaming for help. When Patin returned to his house through the back door, he saw blood as he walked through to the front.  He continued out the front door and found Wells crying in front of a neighbor's house as the police arrived.  At the same time, Breaux returned from his hiding place down the street to find Wells wounded and trying to find help.  Huth's body was later discovered in the locked bathroom having suffered a single, fatal gunshot wound through his back, ribs, lungs and heart.

Patin and Wells each spoke with detectives during the investigation.  Patin assisted officers to compile a sketch of two of the perpetrators.  Patin eventually was shown three photographic lineups and identified the Lee brothers in two separate lineups.  Wells was unable to identify anyone from the lineups he was shown.  However, after arrest warrants were issued for the Lee brothers, Wells notified police that he was "100 percent certain" the two suspects were the perpetrators.  The police also located Wells's cellphone being used by Joshua Lee with a new SIM card.  The police also interviewed Breaux after finding his phone at the scene and using it to find him.  Breaux told police he had not seen the perpetrators because he ran out so quickly.

The charges against the Lee brothers were severed and Joshua Lee separately was tried before a jury on May 18 through 22, 2015, and found guilty as charged on all three counts.[7]  On June 19, 2015, the state trial court denied Lee's motion for a new trial.[8]  At a June 23, 2015, hearing, Lee's counsel argued a motion in arrest of judgment claiming that even though Lee was eighteen (18) years old at the time, the dicta in *Miller v. Alabama*, 567 U.S. 460 (2012), indicated he should not receive a life sentence without benefit of parole.[9]  The state trial court denied the motion and sentenced Lee to concurrent terms of life in prison on count one (second degree murder), 25 years in prison on count two (attempted second degree murder), and 20 years in prison on count three (aggravated burglary), with sentences on counts one and two to be served without benefit of parole, probation, or suspension of sentence.[10]

On direct appeal, Lee's appointed counsel asserted two errors for review: [11] (1) the state trial court erred when it denied the defendants' *Daubert*[12] motion to exclude testimony from the firearms examiner; and (2) the state trial court erred when it denied Lee's motion for mistrial based on prosecutor's improper remarks during closing arguments.  On January 17, 2017, Lee was granted leave to file a pro se supplemental brief, which he did not do.[13]  After receiving nothing

---

[7]St. Rec. Vol. 2 of 13, Trial Minutes, 5/18/15; Trial Minutes, 5/19/15; Trial Minutes, 5/20/15; Trial Minutes, 5/21/15; Trial Minutes, 5/22/15; Severance Order 10/11/13; St. Rec. Vol. 3 of 13, Jury Verdict (Count 1), 5/22/15; Jury Verdict (Count 2), 5/22/15; Jury Verdict (Count 3), 5/22/15; St. Rec. Vol. 6 of 13, Trial Transcript, 5/18/15; St. Rec. Vol. 7 of 13, Trial Transcript, 5/19/15; Trial Transcript, 5/20/15; St. Rec. Vol. 8 of 13, Trial Transcript, 5/21/15; Trial Transcript, 5/22/15.

[8]St. Rec. Vol. 2 of 13, Minute Entry, 6/19/15; St. Rec. Vol. 3 of 13, Motion for New Trial, 6/10/15; St. Rec. Vol. 8 of 13, Hearing Transcript, 6/19/15.

[9]St. Rec. Vol. 2 of 13, Sentencing Minutes, 6/23/15; St. Rec. Vol. 3 of 13, Motion in Arrest of Judgment, 6/23/15; St. Rec. Vol. 8 of 13, Sentencing Transcript, 6/23/15.

[10]St. Rec. Vol. 2 of 13, Sentencing Minutes, 6/23/15; St. Rec. Vol. 3 of 13, Motion in Arrest of Judgment, 6/23/15; St. Rec. Vol. 8 of 13, Sentencing Transcript, 6/23/15.

[11]St. Rec. Vol. 8 of 13, Appeal Brief, 2016-KA-0049, 11/28/16.

[12]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[13]St. Rec. Vol. 8 of 13, Motion to file Pro Se Brief, 1/5/17; 4th Cir. Order, 2016-KA-0049, 1/17/17.

from him, on April 26, 2017, the Louisiana Fourth Circuit affirmed Lee's convictions and sentences finding the claims meritless.[14]

Lee's convictions were final under federal law thirty (30) days later, on May 26, 2017, when he did not seek timely review in the Louisiana Supreme Court. La. S. Ct. Rule X § 5; *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

Almost five months later, on October 19, 2017, Lee filed a writ application with the Louisiana Supreme Court seeking review of his direct appeal.[15] On December 15, 2017, the Louisiana Supreme Court declined to consider Lee's writ application finding it untimely filed under Louisiana Supreme Court Rule X § 5.[16]

On April 23, 2018, Lee signed and submitted to the state trial court an application for post-conviction relief asserting the following grounds for relief:[17] (1) he is entitled to a new sentencing hearing because he was only 18 when the crimes occurred; (2) the indictment was not returned in open court as required by state law; (3) he was not provided with a grand jury transcript; (4) he was denied effective assistance of counsel when counsel failed to move to quash the indictment because it was not returned in open court; (5) he was denied effective assistance of counsel on appeal when counsel failed to assert error in the failure to return the indictment in open court; (6)

---

[14]*Lee*, 217 So.3d at 1266; St. Rec. Vol. 8 of 13, 4th Cir. Opinion, 2016-KA-0049, 4/26/17; *see* 4th Cir. Order, 2016-KA-0049, 3/24/17.

[15]St. Rec. Vol. 13 of 13, La. S. Ct. Writ Application, 17-KA-1805, 10/25/17 (efiled 10/19/17); St. Rec. Vol. 8 of 13, La. S. Ct. Letter, 217-KH-1805, 10/25/17.

[16]*State ex rel. Lee v. State*, 231 So.3d 636 (La. 2017); St. Rec. Vol. 13 of 13, La. S. Ct. Order, 2017-KH-1805, 12/15/17.

[17]St. Rec. Vol. 13 of 13, Application for Post-Conviction Relief, dated 8/7/15. Lee's application was accompanied by other requests/motions that were rejected by the Court.

the State could not prove specific intent without a mental evaluation and the statute is vague and overbroad in its use of the term specific intent; and (7) the indictment failed to charge aggravating circumstances on which it relied leaving the indictment vague and overbroad.

On June 5, 2018, the state trial court denied relief finding in its reasoned opinion that there was no merit in Lee's claims.[18]  On July 10, 2018, Lee submitted an application to the Louisiana Fourth Circuit seeking review of that ruling.[19]  The Louisiana Fourth Circuit summarily denied the writ application on September 11, 2018.[20]

On August 12, 2019, the Louisiana Supreme Court denied Lee's related writ application finding that his sentencing claim was procedurally barred from post-conviction review under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[21]  The Court also held that Lee failed to show ineffective assistance of counsel under the *Strickland v. Washington*, 466 U.S. 668 (1984) standards.  As to all other claims, the Court summarily held that Lee failed to meet the burden of proof under La. Code Crim. P. art. 930.2.

## II.  **Federal Petition**

On September 12, 2019, after correction of certain deficiencies, the clerk of this Court filed Lee's petition for federal habeas relief in which he asserted nine grounds for relief:[22] (1) Lee is entitled to a new sentencing hearing because he was only 18 when the crimes occurred; (2) the indictment was not returned in open court as required by state law; (3) he was not provided with a grand jury transcript; (4) he was denied effective assistance of counsel when counsel failed to

---

[18]St. Rec. Vol. 13 of 13, Trial Court Judgment, 6/5/18.

[19]St. Rec. Vol. 13 of 13, 4th Cir. Writ Application, 18-K-0604, 7/10/18 (efiled 7/10/18); *see* Duplicate 4th Cir. Writ Application, 18-K-0604, 7/24/18 (efiled 7/24/18); 4th Cir. Letter, 7/27/18; Letter with Copy, efiled 8/9/18.

[20]St. Rec. Vol. 13 of 13, 4th Cir. Order, 2018-K-0604, 9/11/18.

[21]*State v. Lee*, 279 So.3d 360 (La. 2019); St. Rec. Vol. 13 of 13, St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2018-KH-01620, 8/12/19; La. S. Ct. Writ Application, 18-KH-1620, 10/1/18 (efiled 9/26/18).

[22]Rec. Doc. No. 3-2.

move to quash the indictment because it was not returned in open court; (5) he was denied effective assistance of counsel on appeal when counsel failed to assert as error the failure to return the indictment in open court; (6) the State could not prove specific intent without a mental evaluation and the statute is vague and overbroad in its use of the term specific intent; (7) the indictment was vague and overbroad because it failed to charge aggravating circumstances on which it relied; (8) the state trial court erred when it denied the defendants' *Daubert* motion to exclude testimony from the firearms examiner; and (9) the state trial court erred when it denied his motion for mistrial based on prosecutor's improper remarks during closing arguments.

The State filed a response in opposition to Lee's federal habeas petition asserting that state court review of two of his claims was not exhausted and those claims are technically in procedural default. In addition, the State argues that the remaining claims are either not cognizable on federal review or are without merit.[23]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to Lee's petition, which is deemed filed in this Court under the mailbox rule on August 19, 2019.[25] The threshold questions on habeas review under the amended

---

[23]Rec. Doc. No. 12.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court received and docketed Lee's deficient petition on September 30, 2019, when it was received. Lee signed the memorandum in support of the petition on August 19, 2019, which is the earliest date appearing in the record on which he could have delivered the original pleadings to prison officials for mailing to a federal court. The fact that he later paid the filing

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Lee's petition was timely filed. The State, however, asserts that review of some of Lee's claims is not exhausted and those claims are now in procedural default. The record also reflects that Lee's first claim was procedurally barred from review by the Louisiana Supreme Court. For the reasons that follow, three of Lee's claims are in procedural default and the state court's denial of relief on the remaining claims was not contrary to or an unreasonable application of Supreme Court law.

## IV.    **Exhaustion Doctrine**

Lee's counsel asserted two claims on direct appeal that he urges in this federal petition as his eighth and ninth claims challenging denial of the *Daubert* motion and prosecutorial misconduct. Lee included these claims in his untimely filed Louisiana Supreme Court writ application which that Court declined to consider. In doing so, the Court referenced its well-followed rule that requires writ applications to be filed or mailed thirty-days after issuance of the appellate court's ruling. La. S. Ct. Rule X § 5; *Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009). As indicated in the procedural history, Lee did not meet this deadline and the Court declined to consider his writ application. *Butler*, 533 F.3d at 318-319; *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same).

---

fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

Thus, for purposes of exhaustion, Lee failed to present these claims to the Louisiana Supreme Court in a procedurally proper manner.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).

The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" to the highest state court. *Id*. (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id*. (citing *Nobles*, 127 F.3d at 420). Furthermore, it is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically and properly presented to the Louisiana Supreme Court, and vice versa. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The record shows that Lee failed to present his *Daubert* and prosecutorial misconduct claims to the Louisiana Supreme Court in a procedurally proper manner to afford that Court the opportunity to consider the claims. While he did so on post-conviction review as to his other claims asserted herein, his failure to exhaust review of these two claims means he has presented a "mixed petition" containing both exhausted and unexhausted claims.

Typically, the Court would recommend that Lee's petition be dismissed without prejudice to allow him to pursue exhaustion of all of his claims in the appropriate state courts. However, unexhausted claims, those claims which were not "fairly presented" to the state courts, may be considered "technically" exhausted if the habeas petitioner is now prohibited from litigating those claims in the state courts because of some procedural rule. If that is so, then those "technically" exhausted habeas claims might be considered procedurally defaulted. *See Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)) (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights"). When state court remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims. *See Coleman*, 501 U.S. at 722. "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, . . . [then] there is a procedural default for purposes of federal habeas . . ." *Id.* at 735 n. 1.

Thus, a habeas petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and thereafter would be barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (citing

10

*Coleman*, 501 U.S. at 731-33 and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)); *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir. 1998). In such a case, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted and may be dismissed for that reason. *Id.*

In this case, it is reasonable to conclude that Lee is now unable to litigate his defaulted claims in the Louisiana courts and any attempt to litigate these claims would result in dismissal on state procedural grounds. *See State v. Lee*, 279 So.3d 360 (La. 2019) (*per curiam*) (per La. Code crim. P. art. 930.6, Lee "has now fully litigated his application for post-conviction relief in state court.")[26] Based on the record, any attempt to litigate his claims now likely would be dismissed as repetitive under La. Code Crim. P. arts. 930.4 or as time-barred by the provisions of La. Code Crim. P. art. 930.8. *Id.* Therefore, Lee's *Daubert* and prosecutorial misconduct claims are now considered procedurally defaulted. *Sones*, 61 F.3d at 416 (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)).

The procedural default doctrine bars federal habeas corpus review if the state courts would now refuse to address a habeas petitioner's unexhausted federal claims because litigation of those claims would be barred by state procedural rules. In this case, Lee has one other claim, challenging his sentencing under *Miller*, which is also in procedural default because it was denied by the Louisiana Supreme Court on state law procedural grounds. Rather than be repetitive of the procedural default analysis, the Court will consider the standards of review for the procedural default of all three claims in the next section of this report and recommendation.

---

[26]St. Rec. Vol. 13 of 13, St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2018-KH-01620, 8/12/19.

**V.**    **Procedural Default (Claims One, Eight, and Nine)**

In addition to the two technically defaulted claims, the record shows that Lee's claim challenging his life sentence without benefit of parole under *Miller* and possibly general grounds of excessiveness, was barred by the Louisiana Supreme Court as an improper grounds for post-conviction review under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*.  The language of La. Code Crim. P. art. 930.3 enumerates grounds on which postconviction relief may be granted and does not list sentencing errors among them.  In *State ex rel. Melinie*, the Louisiana Supreme Court made clear that La. Code Crim. P. art. 930.3 "provides no basis for review of claims of excessiveness or other sentencing error post-conviction."  665 So.2d at 1172.

The State apparently overlooked and did not address this part of the Louisiana Supreme Court's decision in its opposition response.  Nevertheless, while the State's response does not rely on the procedural bar imposed on this claim, it has not expressly waived procedural default as a defense.  The United States Fifth Circuit has held that, when there is no express waiver, the district court may, in its discretion, address the affirmative defenses *sua sponte*.  *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006) (citing *Magouirk*, 144 F.3d at 360) (addressing procedural default); *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations).  When the court exercises its discretion to do so *sua sponte*, it must assure that the petitioner has notice that the issue is being considered.  *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk*, 144 F.3d at 358.  Therefore, the Court hereby gives Lee express notice that the Court is considering procedural default as to his sentencing claim (claim one in this federal petition).  *Fisher*, 169 F.3d at 301; *Magouirk*, 144 F.3d at 358.  **Accordingly, Lee is hereby specifically instructed that this report and recommendation is notice to him that this Court is *sua sponte* raising the issue of**

**procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**.  *Magouirk*, 144 F.3d at 348.

As discussed above, there are two facets to Lee's procedural default in this case.  As affirmatively asserted by the State, two of Lee's claims challenging denial of the *Daubert* motion (claim eight) and prosecutorial misconduct (claim nine) are in procedural default because of his failure to exhaust state court review.  This technical default has already been explained above.

The second default applies to the sentencing claim (claim one) and the application of the bar under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* as applied by the Louisiana Supreme Court.  This Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of Lee's claim that he is entitled under *Miller* to a new sentence as a result of his age of 18-years when the crimes were committed and any general claim of excessive sentence.

### A.      Independent and Adequate State Ground

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Cone*, 556 U.S. at 465 (citing *Coleman*, 501 U.S. at 731-32) ; *Ramirez v. Stevens*, 641 F. App'x 312, 319 (5th Cir. 2016); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that

its judgment is independent of federal law and rests on a state procedural bar. *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019) (citing *Harris*, 489 U.S. at 263). Federal review is barred even when the state courts alternatively discuss the merits of the claim. *Id.*; *Robinson v. Louisiana*, 606 F. App'x 199, 204 (5th Cir. 2015) (citing *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010)).

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Rhoades*, 914 F.3d at 372; *Rogers v. Mississippi*, 555 F. App'x 407, 408 (5th Cir. 2014). The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits. *See Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90 (1977).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 316 (2011); *Rogers*, 555 F. App'x at 408. A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) (citation omitted). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Rogers*, 555 F. App'x at 408 (citing *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996)). The question of the adequacy of a state procedural bar is itself a federal question. *Id.* at 60 (citing *Lee*, 534 U.S. at 375).

When evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). For this reason, it is not within the federal court's province to disagree with the

application of the bar; it is only to determine its adequacy.  *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3).

In this case, the Louisiana Supreme Court relied on La. Code Crim. P. art. 930.3 and its related ruling in *State ex rel. Melinie* to bar review of Lee's sentencing claim.  The federal courts have repeatedly held that La. Code Crim. P. art. 930.3, as interpreted by *State ex rel. Melinie*, is an independent and adequate state grounds for dismissal to bar federal habeas corpus review.  *See*, *e.g.*, *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Table, Text in Westlaw) (recognizing Art. 930.3 and *State ex rel. Melinie* to be independent and adequate state grounds); *Reavis v. Hedgeman*, No. 15-1982, 2015 WL 7307329, at *6-7 (E.D. La. Nov. 6, 2015), *adopted*, 2015 WL 7306440 (E.D. La. Nov. 19, 2015) (article 930.3 and *State ex rel. Melinie* are "independent" and "adequate"); *Thornton v. Rogers*, No. 14-1243, 2015 WL 1012997, at *1 (E.D. La. Mar. 5, 2015) (order adopting report and recommendation) (Article 930.3, *State ex rel. Melinie*, and related cases are "independent" and "adequate"); *Williams v. Vannoy*, No. 14-1914, 2015 WL 3505116, at *6-7 (E.D. La. June 3, 2015) (same); *Williams v. Strain*, No. 13-2998, 2014 WL 5305634, at *5-6 (E.D. La. Oct. 15, 2014) (same); *Johnson v. Cain*, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (same); *Evans v. Cain*, No. 11-2584, 2012 WL 2565008, at *6-8 (E.D. La. Mar. 14, 2012), *adopted*, 2012 WL 2565001, at *1 (E.D. La. July 2, 2012) (same).

Similarly, this Court finds the bar imposed under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* both independent and adequate to bar review of Lee's first claim.  The state court's ruling was based on Louisiana law establishing the procedural requirements for the presentation of post-conviction claims challenging his sentence.  *See Fisher*, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue).  The state court's reason was

independent of federal law and adequate to bar review of his sentencing claim in this federal habeas court.

Having found three of Lee's claims to be in procedural default (two by technical exhaustion and one court imposed), this Court will not review Lee's three defaulted claims unless he has established one of the following exceptions to the bar.

### B.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Gonzales v. Davis*, 924 F.3d 236, 241-42 (5th Cir. 2019) (citing *Coleman*, 501 U.S. at 750 and *Harris*, 489 U.S. at 262).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule."); *Gonzales*, 924 F.3d at 242 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Murray*, 477 U.S. at 486.

Lee has offered no cause to excuse the technical default of his unexhausted claims or the procedural bar imposed by the Louisiana Supreme Court. The record does not support a finding that any external factor prevented Lee from asserting the claims in a procedurally proper manner. Lee simply waited too long to properly exhaust his *Daubert* and prosecutorial misconduct claims

through the Louisiana Supreme Court.  He also failed to assert the sentencing claims until post-conviction review despite the fact that his counsel argued the *Miller* claims prior to sentencing.[27] The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice." *Matchett v. Dretke*, 380 F.3d 844, 848-49 (5th Cir. 2004) (quoting *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.1997)).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134, n.43 (1982)).

Lee's defaulted claims are, therefore, procedurally barred from review by this federal habeas corpus court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996), *vacated on other grounds*, 522 U.S. 87 (1998)[28] (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief).

## C.   <u>Fundamental Miscarriage of Justice</u>

Lee may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  *Gonzales*, 924 F.3d at 241-42.  To establish a

---

[27]*See* St. Rec. Vol. 3 of 13, Motion in Arrest of Judgment, 6/23/15; St. Rec. Vol. 8 of 13, Sentencing Transcript, p.2, 6/23/15.  In addition, there is no Supreme Court precedent that would provide cause or that has applied the holding in *Miller* to any adult, including those like Lee, who was just months shy of his nineteenth birthday when he committed the charged offenses.  *See Bergara v. Davis*, No. 13-273, 2016 WL 8727161 at *3-4 (S.D. Tex. Jul. 15, 2016) (*Miller* did not change the law as to adult offenders) (citing *Harmelin v. Michigan*, 501 U.S. 957, 994-96 (1991)); *Williams v. Cain*, No. 14-800, 2016 WL 3248029 at *24 (W.D. La. Apr. 19, 2016) (*Miller* made a clear distinction for offenders at the age of majority).

[28]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte* but may do so in its discretion.  *Id.*

fundamental miscarriage of justice, Lee must provide this court with evidence that would support a "colorable showing of factual innocence." *Murray v. Quarterman*, 243 F. App'x 51, 55 (5th Cir. 2007). To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Id*. (citing *Bagwell v. Dretke*, 372 F.3d 748, 756 (5th Cir. 2004)); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 6324 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Woodfox*, 609 F.3d at 793.

Lee does not present any claim, and the record contains nothing, to suggest or establish his actual innocence on the underlying crimes to compel this court to consider his defaulted claims, none of which address guilt or innocence. In other words, Lee fails to present any evidence or argument of actual innocence to excuse the procedural default of these claims. He, therefore, has failed to overcome the procedural bar to his claim, and the *Daubert* (claim eight), prosecutorial misconduct (claim nine), and sentencing (claim one) claims should be dismissed with prejudice.

## V.    Standards of a Merits Review of the Remaining Claims

The standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, __ U.S. __, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.").

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**VI.**    **Return and Adequacy of the Indictment (Claims Two and Seven)**

Lee alleges that his conviction is invalid because the indictment was not returned in open court as required by state law.  He also claims that the indictment was inadequate to hold him because it failed to charge the aggravating circumstances outlined in La. Code Crim. P. art. 905.4 on which the State relied to prove second degree murder, leaving the indictment vague and overbroad.

The State argues that Lee cannot prove that the return was not made in open court and otherwise, the claim is a matter of state law not cognizable on federal habeas review.  The State also argues that the indictment was sufficient to place Lee on notice of the crimes charged.  The State further asserts that Lee fails to provide any legal support for his argument that the indictment or the statute setting forth the circumstances on which he could be tried for second degree murder were vague or overbroad.

Lee was denied relief on these claims at each level of the state courts on post-conviction review.

To the extent Lee's claims concern application of or compliance with state law on the return and filing of grand jury indictments, his claims are not cognizable in federal habeas corpus review. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Estelle*, 502 U.S. at 62 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  A federal court on habeas review "does not sit as a super state supreme court" to review errors in the application of state law.  *Montgomery v. Cockrell*, 32 F. App'x. 126, 2002 WL 334631, at *2 (5th Cir. Feb. 14, 2002) (citation omitted).

Moreover, contrary to Lee's allegations, the state court record contains a return clearly reflecting return of the indictment against Lee by the grand jury in open court on September 2,

2010, as required by La. Code Crim. P. art. 383.[29]  The return states that a quorum of ten of the twelve duly empaneled and sworn grand jurors "came into open court" to file the indictment.[30]  The document also reflects that the state trial judge was present to receive the return and to order the grand jurors to return on a subsequent date to continue their duties.  Lee's allegations in this regard are factually baseless and require no further discussion.

Lee also argues that the indictment was deficient because it was insufficient in content and form and failed to include the supporting aggravating circumstances under La. Code Crim. P. art. 905.4.  The United States Fifth Circuit Court of Appeals, however, has declined to review claims alleging insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction . . . [and] this can be determined only by looking to the law of the state where the indictment was issued." (emphasis added) *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (citation and quotations omitted); *Evans v. Cain*, 577 F.3d 620, 624-25 (5th Cir. 2009); *Davis v. Craig*, 66 F.3d 319, 1995 WL 534730, at *3 (5th Cir. Jul. 25, 1995) (Table, Text in Westlaw).  Resolution of such an issue on federal habeas review is precluded "[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Alexander*, 775 F.2d at 598 (quotation and citation omitted); *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969) ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.").

---

[29]St. Rec. Vol. 1 of 13, Grand Jury Return, 9/2/10.  Article 383 states in relevant part that "[i]ndictments shall be returned into the district court in open court . . .."

[30]*Id.*

Lee asserted his claim challenging the form and sufficiency of his indictment in the Louisiana Supreme Court on post-conviction review.  The Court denied relief for Lee's failure to meet his burden of proof under La. Code Crim. P. art. 930.2.  In doing so, the Louisiana Supreme Court necessarily concluded, as did the lower courts, that the indictment was sufficient in content and form under Louisiana state law.  *Alexander*, 775 F.2d at 599 ("By refusing to grant appellant relief . . . the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.").  The Louisiana Supreme Court has, therefore, had the opportunity to address Lee's challenge to his indictment and has by clear inference determined that the indictment was proper.  For this reason, federal review of this claim is prohibited.

Even if due process analysis is applied, however, Lee's claim fails.  Due process concerns arise when state court errors make the underlying proceedings fundamentally unfair.  *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986).  Claims asserting violation of due process rights present a mixed question of law and fact for purposes of applying the AEDPA deferential standards of review.  *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).  Thus, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of federal law.

The United States Supreme Court has held that an indictment is sufficient if it both informs the defendant of the accusation against him, so as to enable him to prepare his defense, and affords him protection against double jeopardy.  *United States v. Debrow*, 346 U.S. 374 (1953); *United States v. Ramos*, 537 F.3d 439, 459 (5th Cir. 2008).  Sufficiency of a state court bill of information or indictment will not be reviewed by a federal habeas court under § 2254, unless it can be shown that it is so defective that it deprives the convicting court of jurisdiction.  *McKay v. Collins*, 12

F.3d 66, 68 (5th Cir. 1994); *Alexander*, 775 F.2d at 598.  To attain the necessary clarity in its language, Louisiana law describes the indictment as follows:

> The indictment shall be a <u>plain, concise, and definite</u> written statement of the essential facts constituting the offense charged.  <u>It shall state for each count the official or customary citation of the statute</u> which the defendant is alleged to have violated.  Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

(emphasis added) La. Code Crim. P. art. 464.

The grand jury indictment in Lee's case provided in relevant part the following charges against Lee occurring on April 22, 2010 in Orleans Parish.[31]  As to count one, the indictment stated that Lee "committed the crime of **SECOND DEGREE MURDER OF CHAD HUTH**, contrary to the form of Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same."  As to count two, it asserted that Lee "committed the crime of **ATTEMPTED SECOND DEGREE MURDER OF CHRISTOPHER WELLS**, contrary to the form of Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same."  As to count three, the indictment charged that Lee "committed the crime of **AGGRAVATED BURGLARY LOCATED AT 5323 CAMERON BOULEVARD**, contrary to the form of Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same."

Contrary to Lee's claims, there was no state or federal requirement that every element, aggravating circumstance, or fact underlying the charges be listed in the indictment.  In fact, the aggravating circumstance provision, La. Code Crim. P. art. 905.4, referenced by Lee has absolutely no relevance to his case.  That statute relates to aggravating circumstances that may be considered

---

[31]St. Rec. Vol. 1 of 13, Indictment, 9/2/10.

when imposing a death sentence in a capital case and, as an aside, has been deemed constitutional by the United States Supreme Court.  *Lowenfield v. Phelps*, 484 U.S. 231 (1988); *Welcome v. Blackburn*, 793 F.2d 672 (5th Cir. 1986).  Because Lee faced second degree murder charges and a life sentence (not death), Article 905.4 has no apparent relevance and need not have been referenced in his indictment.  His vagueness and overbreadth arguments based on the absence of the Art. 905.4 aggravating circumstances must be rejected.

The indictment form and its contents used in Lee's case was specifically authorized by La. Code Crim. P. art. 462[32] and 465(A)(32).[33]  In addition, this same "short form" indictment form has consistently been found to provide the necessary due process protections required by federal law.  *See Green v. Cain*, No. 14-2073, 2016 WL 6477038, at *11-12 (E.D. La. May 13, 2016), *adopted*, 2016 WL 6441232, at *1 (E.D. La. Nov. 1, 2016), *cert. of app. denied*, 2017 WL 7736485, at *1 (5th Cir. Aug. 3, 2017); *Landor v. Cain*, No. 13-5515, 2014 WL 7342361, at *20 (E.D. La. Dec. 23, 2014); *Gross v. Cain*, No. 09-3353, 2010 WL 1552739, at *13-*15 (E.D. La.

---

[32]The language of the short form indictment is provided for in La. Code Crim. P. art. 462:

The indictment by a grand jury may be in substantially the following form:
In the (Here state the name of the court.) on the ___ day of ___, 20__.  State of Louisiana v. A.B. (Here state the name or description of the accused.).
The grand jury of the Parish of ____, charges that A.B. (Here state the name or description of the accused.) committed the offense of ____, in that (Here set forth the offense and transaction according to the rules stated in this Title.  The particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars.) contrary to the law of the State of Louisiana and against the peace and dignity of the same.

[33]La. Code Crim. P. art. 465(A)(7), (13) and (32) & (B)provide the short form language for the three charges against Lee:

A.  The following forms of charging offenses may be used, but any other forms authorized by this title may also be used:  [. . .]
7.  Attempt – A.B. attempted to ___ (commit theft of one rifle – state property subject of the theft; rob C.D.; or murder C.D.; as the case may be).  [. . .]
13.  Aggravated Burglary – A.B. committed aggravated burglary of the dwelling of C.D.; or A.B. committed aggravated burglary of a warehouse (or other structure, watercraft, or movable, as the case may be).  [. . . ]
32. Second Degree Murder--A.B. committed second degree murder of C.D.  [. . .]
B.  The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged.  If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article.

Mar. 11, 2010), *adopted*, 2010 WL 1539743, at *1 (E.D. La. Apr. 14, 2010); *Lindsey v. Cain*, No. 05-1593, 2009 WL 1575466 at *12 (E.D. La. May 29, 2009) (order adopting report); *see also Liner v. Phelps*, 731 F.2d 1201 (5th Cir. 1984).

Lee's indictment provided notice of the specific date, location, the victims' identities, and the specific charges against him.  Under the precedent cited above, the indictment contained more than adequate information to apprise him of the crimes with which he was charged to prepare a defense and avoid double jeopardy.  When this short form indictment is used, the defendant's rights are further protected because "it is intended that the defendant use a bill of particulars to procure details as to the statutory method by which he committed the offense."  *State v. Page*, 28 So.3d 442, 453 (La. App. 5th Cir. 2009).  This is exactly what Lee's counsel did several times prior to trial.[34]

The details provided in Lee's indictment comply with the test for constitutional sufficiency established by the federal and state cases cited above.  The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court precedent.  Lee is not entitled to federal habeas corpus relief on these claims.

## VII.    Grand Jury Transcript (Claim Three)

Lee argues that he should be provided with a copy of the grand jury transcript to search for potential exculpatory evidence.  He also suggests that he has been presumably prejudiced if the hearing was not recorded or the recording was lost.  He also argues that the State may have breached its duty to protect and produce the recording prior to trial and that failure may have

---

[34]*See*, *e.g*, St. Rec. Vol. 1 of 13, Application for Supplemental Bill of Particulars, 2/17/11; Application for Supplemental Bill of Particulars, 4/8/11; Motion to Quash, 5/11/11 (arguing that the bill of particulars had not been updated).

resulted in the denial of his right to meaningful collateral review and effective assistance of counsel where counsel was denied access to a complete record before trial.

The State argues, in opposition, that Lee had no right to the grand jury transcript and has failed to establish a particularized need for the grand jury transcript to have been produced in connection with any of his collateral review.

On February 17, 2011, Lee's trial counsel filed a motion for a supplemental bill of particulars which included a request for a copy of the complete and unredacted grand jury transcript.[35]  No reason for that request was given in the motion.  The State responded on June 7, 2011, stating simply, "Not entitled."[36]  The grand jury transcript was not included by Lee's counsel in the later-filed pretrial motion requesting copies of transcripts of all pretrial and trial proceedings.[37]  In fact, there is no mention of the grand jury transcript again until Lee filed his state application for post-conviction relief and an accompanying motion on April 23, 2018.[38]  Lee was denied relief on this issue at each level of the state courts for his failure to prove his entitlement to the transcript.

As an initial matter, Lee dedicates much of his argument to duties obliged to the State by state law as it pertains to maintenance and production of grand jury and other transcripts.  This federal habeas court does not sit to evaluate matters of state law.  *Swarthout*, 562 U.S. at 219; *Estelle*, 502 U.S. at 67-68.  Nevertheless, the Court will address the claim to the extent Lee attempts to assert a federal due process right to access the grand jury transcripts.

---

[35]St. Rec. Vol. 1 of 13, Application for Supplemental Bill of Particulars, 2/17/11.

[36]St. Rec. Vol. 1 of 13, State's Response, 6/7/11.

[37]St. Rec. Vol. 1 of 13, Motion for Complete Recordation of All Pre-trial and Trial Proceedings, 12/5/11.

[38]St. Rec. Vol. 13 of 13, State's Application for Post-Conviction Relief, dated 4/23/18; Motion for Grand Jury Transcript, dated 4/23/18.

Grand jury matters in Louisiana are secret, and transcripts of grand jury proceedings are not generally available to a defendant. *See* La. Code Crim. P. art. 434 (declaring grand jury proceedings to be secret); *State v. Sheppard*, 350 So.2d 615 (La. 1977). Under both state and federal law, there is a well-rooted premise that availability and disclosure of grand jury testimony, especially on collateral review, turns on the defendant's showing of a particularized need for the transcript. *See*, *generally*, *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399-401 (1959) (criminal defendant must meet its burden of showing a "particularized need" for disclosure of grand jury); *State v. Higgins*, 898 So.2d 1219, 1241 (La. 2005). In addition, access to grand jury transcripts generally is limited to when there is showing made that the transcript contains exculpatory or favorable impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963) and that information outweighs the need for secrecy. *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998); *State v. Williams*, 769 So.2d 629, 635 (La. App. 4th Cir. 2000) (citing *State v. Peters*, 406 So.2d 189 (La. 1981), and *State v. Trosclair*, 443 So.2d 1098 (La. 1983), *cert. dism'd*, 468 U.S. 1205 (1984).

Lee has not alleged a *Brady* claim or that any *Brady* information exists to warrant a breach of the sanctity of the grand jury proceeding. His arguments spout only general rights to pretrial disclosures. As to his case, his arguments are entirely speculative and devoid of any suggestion that something untoward transpired before his grand jury. In the absence of a showing of a "particularized need" for the grand jury transcript, Lee is not entitled to habeas corpus relief. *See Robinson v. Cain*, Civ. Action No. 05-5478, 2011 WL 890973 at *8 (E.D. La. Feb. 7, 2011), *adopted*, 2011 WL 901193 (E.D. La. March 14, 2011) (because defendant failed to meet burden of showing "particularized need," state trial court did not err in refusing to disclose grand jury testimony)).

The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  Lee is not entitled to relief on this claim.

## VIII.  <u>Effective Assistance of Counsel (Claims Four and Five)</u>

Lee asserts that he was denied effective assistance of counsel when trial counsel failed to move to quash the indictment on the basis that it was not returned in open court.  He also claims that he was denied effective assistance of counsel on appeal when his appellate counsel failed to assert the same alleged error.

The State contends that Lee cannot establish deficient performance under *Strickland* because the indictment was returned in open court, and his counsel had no reason to assert the issue to the state trial or appellate courts.

Lee asserted this claim on state court post-conviction review.  The Louisiana Supreme Court provided the last reasoned opinion finding that Lee failed to show ineffective assistance of counsel under *Strickland*.  This was the last reasoned opinion on the claim.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox*, 609 F.3d at 89.  Under the AEDPA, the question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, in this case *Strickland*.

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 687.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding

ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See id.* at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. To determine whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

31

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles*, 556 U.S. at 112). The federal courts take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n. 2).

In assessing the deference due, the habeas court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. A federal habeas court makes every effort to eliminate the distorting effects of hindsight, reconstruct the circumstances of the challenged conduct, and evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions supported by the circumstances are objectively reasonable and not unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

As discussed above, Lee's claim that the grand jury was not returned in open court is factually baseless. The record proves that, on September 2, 2010, ten of the twelve grand jurors with the assistant district attorney appeared in open court before the state court judge to return the indictment against Joshua and Christopher Lee.[39] In addition, as already discussed, the content and form of the indictment were constitutionally adequate under both state and federal law. *See Alexander*, 775 F.2d at 599.

---

[39] St. Rec. Vol. 1 of 13, Grand Jury Return, 9/2/10.

Therefore, there was no reason for Lee's trial counsel to have moved to quash a valid indictment that was presented in open court.  Counsel does not provide ineffective assistance by failing to assert a meritless motion.  *Evans v. Davis*, 875 F.3d 210, 218 (5th Cir. 2017) ("Obviously, counsel is not deficient for failing to make a meritless . . . motion."); *Darby v. Johnson*, 176 F.3d 479, 1999 WL 153045, at *2 (5th Cir. 1999) ("Trial counsel's failure to assert a meritless motion cannot be grounds for a finding of deficient performance."); *accord Soliz v. Davis*, 750 F. App'x 282, 293 (5th Cir. 2018) (quoting *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007)). Lee has not shown error or deficient performance by his counsel in failing to file motion to quash based on the return, form, or content of the indictment.

Similarly, the same analysis is true as to Lee's appellate counsel.  Applying the *Strickland* standard to appellate counsel, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a non-frivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *see also, Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).  Lee has not pointed to a non-frivolous issue with regard to the return, form, or content of his indictment.  Where there was no error or issue to assert, his appellate counsel was not ineffective.

For these reasons, Lee has not shown that the denial of relief on his ineffective assistance of counsel claims was contrary to or an unreasonable application of *Strickland*.  He is not entitled to federal habeas relief on these claims.

## IX.    Proof of Specific Intent (Claim Six)

Lee claims under a broad reading that the State could not prove that he had the requisite intent to commit the second degree murder without evidence of his mental state at the time of the

crime.  He also argues that the statutory term "specific intent" is vague and overbroad where there

is "no set procedure for proving intent at the moment of crime without analyzation."[40]

The State argues that Louisiana law adequately defines both the crime and the term specific

intent to satisfy any question of vagueness or overbreadth.  The State further argues that there is

no statutory or constitutional requirement for the State to prove intent through mental evaluation.[41]

Lee was denied relief on post-conviction review at each level of the state courts for failure

to show merit in the claims.

In Louisiana, a conviction for second degree murder can be based on proof that the offender

had the specific intent to kill, *inter alia*.  *State v. Sullivan*, 729 So.2d 1101, 1111 (La. App. 4th Cir.

1999); *State v. Hongo*, 706 So.2d 419, 420 (La. 1997).  Specific criminal intent is clearly defined

in the law as the state of mind which exists when the circumstances indicate that the offender

actively desired the prescribed criminal consequences to follow his act or failure to act.  La. Rev.

Stat. Ann. § 14:10(1).  Specific intent may be inferred from the circumstances surrounding the

offense and the conduct of the defendant.  La. Rev. Stat. Ann. § 14:10(1); *State v. Bishop*, 835

So.2d 434 (La. 2003).  There is no state or federal requirement that the State prove specific intent

by mental evaluation.  The denial of relief on this point could not have been contrary to or an

unreasonable application of Supreme Court law since none exists that would require a different

holding.

---

[40]Rec. Doc. No. 3-2, p. 61.

[41]The State also argues that Lee has failed to prove that there was insufficient evidence of his specific intent to kill or his guilt of the second degree murder charge under *Jackson v. Virginia*, 443 U.S. 307 (1979).  Even under a broad reading, Lee has not asserted in state court or this Court that there was insufficient evidence to support the guilty verdict under *Jackson*.  If he is read to do so now, state court review of that claim would not be exhausted and it would now be subject dismissal with prejudice as under the technical procedural default bar discussed previously in this Report.

Lee's vagueness and overbreadth claims are also unavailing. The United States Supreme Court has provided the well-rooted standard for addressing vagueness or overbreadth which instructs that a statute must describe the proscribed conduct "in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973); *Gable v. Massey*, 566 F.2d 459, 462 (5th Cir. 1978). Further, a court is not required to entertain a challenge to the "uncertainty" of a statute where the defendant's conduct fell "squarely within the 'hard core' of the statute's proscriptions." *Id*. Louisiana law is consistent with this standard where it determines whether the statute informed the defendant of the nature and cause of the accusation against him with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. *State v. Mallett*, 357 So.2d 1105 (La. 1978); *State v. Gisclair*, 363 So.2d 696 (La. 1978).

In relevant part, second degree murder is defined in Louisiana as the killing of a human being when the defendant had the specific intent to kill or is engaged in the perpetration of aggravated burglary. La. Rev. Stat. Ann. § 14:30.1. The sole basis for Lee's claims of vagueness or overbreadth is the statute's reliance or use of "specific intent" as an element. However, the Supreme Court has made clear that "a requirement of a specific intent . . . made definite by decision or other rule of law saves [a statute] from any charge of unconstitutionality on the grounds of vagueness." *Screws v. United States*, 325 U.S. 91, 102 (1945); *see also United States v. Kirkham*, 129 F. App'x 61, 71 (5th Cir. 2005) ("If a statute does include 'willfulness' or specific intent as an element, it will normally not be so vague as to deprive a defendant of reasonable notice that his conduct is proscribed."). In other words, the fact that proof of specific intent is included in the statute necessarily precludes the vagueness challenge urged by Lee.

Nevertheless, in Louisiana, the term specific intent is clearly defined by statute and law. The use of the phrase in the second degree statute provides clarity to level and specific purpose of the perpetrator.  More importantly, a reading of the statute demonstrates that it is not vague in explaining to even the common man what actions are considered second degree murder.

The statute also is not overbroad.  To find a criminal offense statute overbroad, there must be a "realistic probability, not a theoretical possibility," that the statute would be applied to conduct not otherwise accounted for in the basic statutory definition. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  To make this showing, a defendant may demonstrate that the statute was applied in his case or other cases in the state courts in a broad manner outside of the actions proscribed in the statute. *Id*.  Lee has in no way met this burden.

Lee's charged and proven crimes fit squarely within the clear definition in the statute, including specific intent and the aggravated robbery.  He has not provided any Louisiana case, and this Court can find none, where a defendant was charged or found guilty of second degree murder for actions not listed or falling outside of the generic definition and proscribed actions addressed in the statute.

Lee, therefore, has not established that specific intent as used in Louisiana, or specifically in the second degree murder statute, is unconstitutional or otherwise vague or overbroad.  The denial of relief by the state courts was not contrary to or an unreasonable application of federal law.  Lee is not entitled to relief on this claim.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Joshua I. Lee's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[42]

New Orleans, Louisiana, this <u>1st</u> day of June, 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[42]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.